J-S72023-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| FATIH D. ANDERSON, | : | |
| | : | |
| Appellant | : | No. 1070 EDA 2017 |

Appeal from the PCRA Order January 5, 2017
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0000555-2009,
CP-51-CR-0000583-2009, CP-51-CR-0006945-2009

BEFORE:   BENDER, P.J.E., MUSMANNO, J., and STEVENS*, P.J.E.

MEMORANDUM BY MUSMANNO, J.:                 **FILED JANUARY 26, 2018**

Fatih D. Anderson ("Anderson") appeals, *pro se*, from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act.[1] We affirm.

In its Opinion, the PCRA court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See** PCRA Court Opinion, 5/2/17, at 1-7.

On appeal, Anderson raises the following issues for our review:

> I.   Denial of effective assistance of counsel.  [Anderson] raised specific issues within his PCRA [P]etition[,] where [Anderson] alleges denial of due process under [A]rticle I, Section 9[,] of the Pennsylvania Constitution[,] as well as

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

---

* Former Justice specially assigned to the Superior Court.

the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

[Anderson] pleads and asserts (5) layered claims of ineffectiveness for this Court's review[:]

(a) Whether [PCRA c]ounsel was ineffective for failing to find trial counsel ineffective for erroneously advising [Anderson] to waive his rights to a jury trial[?]

(b) Whether [PCRA c]ounsel was ineffective for failing to raise trial counsel[']s ineffectiveness for erroneously advising [Anderson] not to testify at [Anderson's] trial[?]

(c) Whether [PCRA c]ounsel was ineffective for failing to raise trial counsel[']s ineffectiveness for failing to object to the perjured testimony of Montrel Green [("Montrel")?]

(d) Whether [PCRA c]ounsel was ineffective for failing to object and raise for appellant [*sic*] review, the prosecution[']s subornation of perjury[?]

(e) Whether [PCRA c]ounsel was ineffective for failing to raise trial counsel's ineffectiveness, for failing to object[] and preserve a **_Brady_**[2] claim referencing to [Pa.R.Crim.P.] Rule 573[?]

II. Whether [Anderson's] right to have an open [c]ourtroom was violated?

III. Newly-Discovered Evidence[,] 42 Pa.[]C.S.A. § 9545[]([b])(1)(ii)[.] Whether [trial] counsel was ineffective for failing to properly investigate and develop the claims and/or omissions made in two separate affidavits, from two separate key Commonwealth witness[e]s[?]

---

[2] **_Brady v. Maryland_**, 373 U.S. 83 (1963)

- 2 -

IV.   Whether the [PCRA] court erred by allowing [PCRA c]ounsel to withdraw[,] and forcing [Anderson] to proceed *pro se*[,] although the issues are of arguable merit[,] and the court[']s decision to allow counsel to withdraw constru7ctively [*sic*] denied [Anderson] access to the court during [his] PCRA litigation[?]

Brief for Appellant at viii-ix (emboldening omitted, footnote added).

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

As a prefatory matter, we consider whether Anderson has waived the issue of PCRA counsel's ineffectiveness for failing to raise it prior to the instant appeal. In *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014) (*en banc*), this Court opined that claims of PCRA counsel's ineffectiveness may not be raised for the first time on appeal. *See also Commonwealth v. Ford*, 44 A.3d 1190, 1200-01 (Pa. Super. 2012) (holding that claims of PCRA counsel ineffectiveness cannot be raised for the first time after a notice of appeal has been taken from the underlying PCRA matter).

Here, Anderson did not raise PCRA counsel's ineffectiveness before the PCRA court. Rather, Anderson raised the issue of PCRA counsel's ineffectiveness for the first time in his Pa.R.A.P. 1925(a) Concise Statement, *after* he had filed his Notice of Appeal. Consequently, we cannot address Anderson's claims of PCRA counsel's ineffectiveness at I(a)-(e) and II.[3] **See Henkel**, 90 A.3d at 20; **see also Ford**, 44 A.3d at 1200-01.

In his issue III, Anderson contends that after trial, he received affidavits from two Commonwealth witnesses: Montrel and Derick Williams ("Williams"). Brief for Appellant at 24. Anderson asserts that the affidavits constitute newly-discovered evidence under 42 Pa.C.S.A. § 9545(b)(1)(ii), and that he included the affidavits in an amended Petition filed within sixty-day period provided by section 9545(b)(2). *Id*. at 26. Anderson claims that the affidavits constitute recantation evidence, which would have been favorable to Anderson's case. *Id*. at 26-27, 30. Anderson argues that he had no way of obtaining the affidavits prior to trial, as he was an indigent prisoner awaiting the appointment of counsel. *Id*. at 27.

In its Opinion, the PCRA court addressed Anderson's issue III, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Opinion, 5/2/17, at 15-18. We agree with the reasoning of the PCRA

---

[3] In his issue II, Anderson contends that PCRA counsel rendered ineffective assistance by not raising a claim that direct appeal counsel was ineffective for failing to raise an issue regarding the denial of Anderson's right to an open courtroom. **See** Brief for Appellant at 21.

court, which is supported by the evidence of record and is free of legal error, and affirm on this basis as to Anderson's issue III. **See id**.

In his issue IV, Anderson contends that the PCRA court erred by "allowing [PCRA c]ounsel to withdraw[,] and forcing [Anderson] to proceed *pro se* in spite of the fact that there was [*sic*] issues of arguable merit in this case[,] and that the [c]ourt's decision to allow [c]ounsel to withdraw constructively denied [Anderson] counsel during this plea litigation." Brief for Appellant at 33.

In its Opinion, the PCRA court addressed Anderson's issue IV, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Opinion, 5/2/17, at 20-21. As we agree with the PCRA court's determination that Anderson's non-waived issues lack merit, we conclude that the PCRA court did not err by permitting PCRA counsel to withdraw from representation. Accordingly, we affirm on this basis as to Anderson's issue IV. **See id**.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/26/18

- 5 -

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA

## CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-6945/555/583-2009 |
| v. | **FILED** : | ~~773 EDA 2012~~  *1070 EDA 2017* |
| FATIH ANDERSON | MAY 0 2 2017 : | |
| | Office of Judicial Records Appeals/Post Trial | |
| | **OPINION** | |



CP-51-CR-0006945-2009 Comm. v. Anderson, Fatih
Opinion

7940814521

Rose Marie DeFino-Nastasi, J.

## PROCEDURAL HISTORY

On February 17, 2012, Petitioner was found guilty after a bench trial, presided over by the Honorable Rose Marie DeFino-Nastasi, of three counts of First Degree Murder, each as a felony of the first degree; three counts of Robbery, each as a felony of the first degree; two counts of Conspiracy, each as a felony of the first degree; three counts of Violation of the Firearms Act § 6108 (VUFA), each as a misdemeanor of the first degree; and three counts of Possession of an instrument of Crime (PIC), 18 Pa.C.S. § 907(b), each as a misdemeanor of the first degree.

On February 17, 2012, Petitioner was sentenced to life without the possibility of parole for each of the three murder convictions; ten (10) to twenty (20) years for each of the robbery convictions; ten (10) to twenty (20) years for each conspiracy conviction; two and one half (2 ½) to five (5) years for each VUFA § 6108 conviction; and two and one half (2 ½) to five (5) for each PIC conviction, all sentences to run concurrently.

On February 26, 2014, the Superior Court affirmed the judgment of sentence.

On August 25, 2014, the Supreme Court denied a petition for allowance of appeal.

1

On July 15, 2015, Petitioner filed a timely pro se Post Conviction Relief Act (PCRA) petition. On May 16, 2016, Petitioner filed a supplemental PCRA petition.

On October 24, 2016, PCRA counsel James Lammendola, Esq. filed a *Turner/Finley* "no-merit" letter[1] and a Motion to Withdraw as Counsel.

The Court formally dismissed the PCRA, on January 5, 2017.

On January 24, 2017, Petitioner filed the instant appeal to the Superior Court.

On March 15, 2017, Petitioner filed a 1925(b) Statement of Matters Complained of on Appeal, pursuant to an Order of the Court, claiming that:[2]

1.  PCRA counsel was ineffective for failing to properly review and evaluate Petitioner's claims in his pro se PCRA petition. The Court erred in accepting PCRA counsel's assertion of no merit with respect to Petitioner's PCRA claims.

2.  PCRA counsel was ineffective for failing to investigate and argue ineffectiveness of trial counsel for advising Petitioner to waive his right to a jury trial. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

3.  PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for advising Petitioner not to testify on his own behalf. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

4.  PCRA counsel was ineffective for failing to effectively argue appellate counsel's ineffectiveness for failure to raise on appeal the issue that Petitioner's right to public access to the courtroom was violated when the court decided to close the courtroom during cross-examination of Commonwealth witness Montrel Green. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

---

[1] *Com. v. Turner*, 544 A.2d 927 (Pa. 1988); *Com. V. Finley*, 550 A.2d 213 (Pa. Super. 1988) (en banc).
[2] The issues have been rephrased for ease of disposition.

2

5. PCRA counsel was ineffective for failing to investigate newly discovered evidence: an affidavit from Montrel Green and an affidavit from Deric Williams. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

6. a) PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for failing to object to the testimony of Montrel Green. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

   b) PCRA counsel was ineffective for failing to argue ineffectiveness of appellate counsel for not raising the issue of prosecutor's subornation of perjury with respect to the testimony of Montrel Green. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

7. PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for failure to raise a *Brady* claim with respect to phone records that were not available until mid-trial. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

8. Trial court erred by allowing counsel to withdraw since he was eligible to receive court-appointed counsel. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

## STATEMENT OF FACTS

In the span of a little over two months, the Petitioner robbed and murdered three individuals within a three block radius in his neighborhood in North Philadelphia.

On July 9, 2007, James McClain suffered three gunshot wounds to his back and chest on the 1600 block of Dauphin Street. The decedent was coming from a baby shower, with gifts in hand when the Petitioner and Co-Defendant, Montrel Green, approached the victim and told him

3

to, "give that shit up." The Co-Defendant attempted to reach into the decedent's pockets. When the decedent pushed him away, the Petitioner shot at him five or six times in the back and chest.

On September 3, 2007, Donte Leak suffered a single gunshot wound to the head at close range in an alleyway behind an elementary school near 16th and Cumberland Streets. The decedent had been seen just prior to his murder in the company of the Petitioner and in the possession of a gun with several letter "L's" scratched onto the bottom part of the clip. The Petitioner was seen the next day with that particular gun.

On September 20, 2007, Stephen Gates was robbed and murdered on the 2500 block of 17th Street. The Petitioner and an unidentified co-conspirator approached the victim with guns in hand and said, "Give that shit up." The victim handed over his money and the Petitioner and Co-Defendant both fired their weapons. The victim suffered six gunshot wounds to his chest and back.

Petitioner disclosed information about each of the crimes to Michael Green. Green testified that he has known the Petitioner his entire life. On September 20, 2007, he was standing at Sydenham and York Streets when he heard gunshots. The next day, some men with guns came looking for the Petitioner. Green went to the Petitioner's house on the 2400 block of North 15th Street but the Petitioner was not home so Green called the Petitioner on his cell phone and told him about the men. Green asked the Petitioner if he was responsible for the murder the night before and why he would shoot Gates. The Petitioner answered, "Fuck that N----r ... They killed my young boy ... One of them had to go." N.T. 2/14/2012, at p. 14. The Petitioner also told Green that he demanded money from the decedent, and when the decedent gave it to him, he shot him with a .38 caliber gun.

4

Green also testified to a conversation he had with Petitioner regarding the murder of Donte Leak. The Petitioner told Green that he was attempting to get a gun that the decedent had in his possession so the Petitioner took the decedent in the back of Stanton School, shot him in the head, and stole the gun. *Id.*, at p. 16-17.

Green further testified that Petitioner admitted to him that he robbed and murdered James McClain. Petitioner told Green that he and Co-Defendant Montrel Green[3] planned to rob someone on the night in question when they came upon the decedent walking down the street carrying gifts. Co-Defendant Green ran up on the decedent and they started tussling. The Petitioner then shot the decedent three times.

Montrel Green testified against the Petitioner as part of a plea agreement.[4] Co-Defendant Green testified that on the night of July 8, 2007, he and the Petitioner were walking down Sydenham Street onto Dauphin Street when Co-Defendant Green said to Petitioner that they should rob someone. Co-Defendant Green walked up to the decedent and told him to "give that shit up" and attempted to reach into his pockets. The decedent pushed the Co-Defendant away and the Petitioner shot at him five or six times. *Id.*, at pp. 226-233.

Julius Roberts testified that he was an eye witness to the robbery and murder of his cousin Stephen Gates. Roberts knows Petitioner for years from the neighborhood. On the night of September 20, 2007, the decedent and Roberts were talking outside Robert's house when Roberts went inside to speak to his mother. She asked him to get her an iced tea from the corner store. Roberts walked passed the decedent on his way to the store which was only feet away when he saw the Petitioner and another male, whom he did not know, peeking around the corner.

---

[3] No relation to Michael Green.

[4] Montrel Green pleaded guilty to Third Degree Murder, Robbery, and Conspiracy to Commit Robbery on July 27, 2010. He agreed that he committed the crime with the Petitioner. N.T. 7/27/2010, at pp. 15, 24-26.

He then saw the two walk toward the decedent and he heard them say, "Give that shit up." They were both holding guns. He observed the decedent hand over money and then both men started shooting at the decedent. Roberts heard twelve to fourteen shots fired. N.T. 2/13/2012, at pp. 69-80.

Deric Williams testified that he knew both the Petitioner and decedent Donte Leak from the neighborhood. On the night of the murder of Leak, Williams saw Petitioner and the decedent together. He asked where they were going and the decedent said they were going to take care of something. The decedent had a gun on his hip that Williams had sold him. The gun was a .40 mm with the letters 'LL' scratched into it. Williams had scratched the letters on himself. The day after the murder, Williams saw the Petitioner in possession of the gun. When Williams asked the Petitioner where he got the gun, the Petitioner said "you know."

Williams further testified that in October, 2008, he saw the Petitioner when both men were in Graterford prison. Williams asked Petitioner about Leak's murder and Petitioner told him what happened. Petitioner said that the decedent set his friend up [to get killed] so he killed him. Petitioner said that the decedent set up Reginald Ford and that it was "Sife" who killed Ford. Petitioner said that on the night of the murder, he and the decedent were smoking in the school yard. When the decedent turned away, Petitioner shot him in the head. *Id.*, at p. 33.

Williams also testified that while in Curran-Fromhold Correctional Facility with the Petitioner on November 6, 2009, he found numerous copies of his statement to the detectives in a stack in the law library. He destroyed all but one which he turned over to homicide detectives. N.T. 2/15/2012, at pp. 36-44.

Police Officer Nelson, the Firearms Examiner, testified that he examined ballistics evidence recovered from the body of decedent McClain as well as lead fragments recovered from

6

the Gates and McClain crime scenes.[5] The lead fragments were consistent with revolver-type ammunition, specifically a .38/357 projectile. Officer Nelson opined that the three (3) murders were most likely committed with a revolver based on the design, weight, and caliber of the bullet specimens recovered and since there were no fired cartridge casings (FCCs) left behind.

## ANALYSIS

A PCRA petitioner alleging ineffectiveness of counsel will be granted relief only if he is able to prove that, "in the circumstances of [his] particular case," the truth-determining process was undermined to the extent "that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. *Com. v. Charleston*, 94 A.3d 1012, 1019 (Pa. Super.), app. Denied, 104 A.3d 523 (Pa. 2014). Pennsylvania Courts have refined the *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) performance and prejudice test into a three-part inquiry. Thus, to prove an ineffective assistance of counsel claim, a petitioner must prove that: (1) the underlying issue is of arguable merit; (2) that counsel's actions lacked an objective reasonable basis; and (3) that the petitioner was prejudiced by counsel's act or omission, *Commonwealth v. Koehler*, 36 A.3d 121, at 132 (Pa.2012) (*citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa.1987)). For a claim to have arguable merit, a petitioner must prove "that the underlying legal claim ... has 'arguable merit.'" *Commonwealth v. Steele*, 961 A.2d 786, 821 (Pa.2008) (emphasis in original). In regards to prejudice, the third prong of the ineffective assistance of counsel test, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been

---

[5] No ballistic evidence was recovered from the Donte Leak murder.

7

different." *Koehler*, 36 A.2d at 132. The failure to show any prong of this test will cause the entire ineffective assistance of counsel claim to fail. *Id.* at 132. Furthermore, counsel is presumed to be effective; the appellant has the burden of proving otherwise. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa.Super.2008).

Petitioner raises a number of layered ineffective assistance of counsel claims – claims that trial/appellate and PCRA counsel were ineffective. In a layered ineffective assistance of counsel claim, PCRA counsel is not ineffective for failing to raise an ineffective assistance of counsel claim where the underlying claim lacks merit. As the Superior Court has explained:

> To prevail on a claim of appellate counsel ineffectiveness for failure
> to raise an allegation of trial counsel ineffectiveness, a PCRA
> petitioner must present a 'layered' claim, *i.e.*, he or she must present
> argument as to each of the three prongs of the *Pierce* test for each
> layer of allegedly ineffective representation. To establish the
> arguable merit prong of a claim of appellate counsel ineffectiveness
> for failure to raise a claim of trial counsel ineffectiveness, the
> petitioner must prove that trial counsel was ineffective under the
> three-prong *Pierce* standard. If the petitioner cannot prove the
> underlying claim of trial counsel ineffectiveness, then petitioner's
> derivative claim of appellate counsel ineffectiveness of necessity
> must fail, and it is not necessary for the court to address the other
> two prongs of the *Pierce* test as applied to appellate counsel.

*Commonwealth v. Paddy*, 15 A.3d 431, 443 (Pa.2008).

The arguable merit prong regarding PCRA counsel's ineffectiveness may only be satisfied by pleading and proving all three elements of the ineffective assistance of counsel test regarding the underlying allegation of trial counsel's ineffectiveness. *Com. v. Dennis*, 950 A.2d 945.

## Issue I

Petitioner claims that PCRA counsel was ineffective for failing to properly review and evaluate Petitioner's claims in his pro se PCRA petition and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to Petitioner's PCRA claims.

As set forth in *Commonwealth v. Turner* and *Commonwealth v. Finley*, after PCRA counsel has conducted an independent review of the record and determined that there are no issues of arguable merit, the following requirements must be met:

1. PCRA counsel must submit a no merit letter detailing the nature and extent of his or her review;

2. The no merit letter by the PCRA counsel must list each issue the Petitioner wished to have presented;

3. The PCRA counsel's no merit letter must include an explanation of why the Petitioner's issues are meritless;

4. The PCRA court must conduct its own independent review of the record; and

5. The PCRA court must agree with counsel that the petition was meritless.

*Commonwealth v. Finley*, 550 A.2d 213, 215 (Pa. Super. 1988).

Our Supreme Court has held that there is no requirement under *Turner/Finley* that "counsel launch into an extra record-investigation of every claim raised by a PCRA petitioner on

9

collateral attack." *Commonwealth v. Rykard*, 55 A.3d 1177, 1190 FN. 9 (Pa. Super. 2012) (*citing Commonwealth v. Porter*, 728 A.2d 890, 895 (Pa. 1998).

In the instant case, PCRA counsel complied with all of the requirements set forth in *Turnery/Finley*. PCRA counsel's *Finley* letter adequately detailed the nature and extent of his review: "I reviewed the quarter sessions file, corresponded with the petitioner, reviewed all relevant notes of testimony, and reviewed the applicable law." *Finley* Letter 10/24/2016, at 1. PCRA counsel then listed the issues Petitioner wished to have reviewed and explained why those issues lacked merit. This Court conducted its own independent examination of the record, and determined that Petitioner's claims were meritless, explaining its reasons for dismissal on the record and in its December 2, 2016, 907 Notice. There is no requirement in *Turner* or *Finley* that counsel go beyond the record of the claims presented and conduct an extra-record investigation.

Therefore, as PCRA counsel and this Court complied with the requirements set forth in *Turner/Finley*, and accurately determined that Petitioner's claims lacked merit, this claim fails.

## Issue II

Petitioner claims that PCRA counsel was ineffective for failing to investigate and argue ineffectiveness of trial counsel for advising Petitioner to waive his right to a jury trial and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

Criminal defendants have a constitutionally guaranteed right to a trial by jury. U.S. Const. amend. VI. In all cases, a Petitioner may waive a jury trial with approval by a judge of the court in which the case is pending. Pa.R.Crim.P. 620. To be valid, it is well settled that a jury waiver must be knowing and voluntary, and the accused must be aware of the essential ingredients inherent to a jury trial. *See Commonwealth v. Mallory*, 941 A.2d 686, 696–97 (Pa.2008); O'Donnell, 740 A.2d at 212; *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597,

10

600 (1973). The three ingredients are: (1) that the jury be chosen from members of the community (i.e., a jury of one's peers), (2) that the accused be allowed to participate in the selection of the jury panel, and (3) that the verdict be unanimous. *Mallory*, 941 A.2d at 697.

Petitioner's layered ineffectiveness of counsel claim fails because Petitioner waived a jury trial and agreed to be tried by the court sitting without a jury. This was preceded by a full colloquy on the record explaining the Petitioner's right to trial by jury. Petitioner indicated, under oath, that he understood his rights and agreed to waive his constitutional right to trial by jury regarding this decision. N.T. 01/27/2012, at pp. 2-18. Petitioner also acknowledged that he spoke to counsel and that no one threatened or promised him anything, except the Commonwealth promised to withdraw the death penalty in exchange for Petitioner's waiver of his right to a jury trial. *Id.*, at pp. 16-17. This colloquy was adequate to show a voluntary and intelligent waiver of Petitioner's right to trial by jury. *See Commonwealth v. Williams*, 222 Pa. Super. 484, 294 A.2d 909 (1972). Petitioner was fully advised of the rights which he was surrendering and nevertheless agreed to proceed by trial without a jury. Since this issue has no merit, trial counsel cannot be found ineffective, therefore PCRA counsel cannot be found ineffective for not having raised it.

### Issue III

Petitioner claims that PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for advising Petitioner not to testify on his own behalf due to his prior firearms conviction[6] and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

---

[6] Petitioner was previously convicted of VUFA § 6106 on 12/28/2006, CP-51-CR-1301331-2006; Petitioner was also previously convicted of VUFA § 6106 on 9/24/2008, CP-51-CR-0002978-2008. The arrest date for that conviction was12/19/2007, 3 months after the instant case and prior to Petitioner's arrest on this case.

11

It is well settled that the decision to testify on one's own behalf is ultimately to be made by the Petitioner after full consultation with counsel. *Commonwealth v. Uderra*, 550 Pa. 389, 706 A.2d 334 (1998). "In order to sustain a claim that counsel was ineffective for failing to advise the appellant of his rights in this regard, the appellant must demonstrate either that counsel interfered with his right to testify, or that counsel gave specific advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf." *Commonwealth v. Carson*, 741 A.2d 686, 699 (1999). The general rule regarding admissibility standards states that the admission of evidence of prior crimes and convictions of the accused is prohibited unless there is an exception. *See* Pa.R.E. 401. Prior bad acts may be introduced to prove motive, intent, absence of mistake or accident, a common scheme, plan or design, to establish the identity of the person charged with the commission of the crime at trial. *Commonwealth v. Ramos*, 366 Pa. Super 624, 628 (1987); *See* Pa.R.E. 401.

No gun was recovered from these incidents. Police Officer Nelson, the Firearms Examiner, testified that the three murders were most likely committed with a revolver based on the design, weight, and caliber of the bullet specimens recovered and since there were no fired cartridge casings (FCCs) left behind at any of the crime scenes. N.T. 02/16/12 at p. 15. The bullet specimens recovered from the deceased McClain's body were consistent with a .38/357 projectile. The two lead fragments recovered from the scene at the 1600 block of Dauphin Street were consistent with a .38/357 projectile. The two lead bullet fragments recovered from the scene of the Gates murder at the 2500 block of North 17th Street were consistent with revolver-type ammunition. *Id.* at pp. 3-22. Montrel Green testified that the Petitioner shot decedent McClain with a .38 caliber revolver. The Petitioner admitted to Michael Green that he shot decedent Gates with a .38 caliber revolver. N.T. 02/14/12 at p. 267.

12

In at least one of Petitioner's prior VUFA convictions, he was in possession of a revolver. Any advice counsel may have given regarding the possible use of the Petitioner's prior gun convictions on cross-examination would not be unreasonable. The three (3) murders were consolidated on the basis of common scheme, plan, or design to establish identity. One of the factors considered was that a revolver was used in all three (3) murders. Moreover, had the Petitioner taken the stand and testified to anything that would have opened the door to the admission of the gun convictions, they would have been admissible. See *Com. v. Fletcher*, 750 A.2d 261, 279 (Pa. 2000) (Where appellant testified that he made his living as a professional boxer and denied having been involved in selling drugs, that testimony opened the door for the prosecutor to impeach him with a previous arrest for selling drugs); *Com. v. Saxton*, 516 Pa. 196, 532 A.2d 352 (1987)(plurality)(where a witness testified that the only gun he owned was the one he had during government service, his testimony could be impeached with evidence that he had been convicted of a prior firearms violation).

Furthermore, the trial court conducted a colloquy and determined that Petitioner understood his right to testify and that he made a knowing, voluntary, and intelligent waiver of his right to testify.

Thus, Petitioner has not shown that trial counsel gave him advice so unreasonable as to vitiate a knowing and intelligent decision to testify on his own behalf. Since this issue has no merit, trial counsel cannot be found ineffective and thus it follows that PCRA counsel cannot be found ineffective.

### Issue IV

Petitioner claims that PCRA counsel was ineffective for failing to effectively argue appellate counsel's ineffectiveness for failure to raise on appeal the issue that his right to public

13

access to the courtroom was violated when the Court decided to close the courtroom during cross examination of Commonwealth witness Montrel Green and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

> The right to a public trial is not absolute; rather, it must be considered in relationship to other important interests. In considering such other interests, a court must assess all of the circumstances to determine if they present a situation in which an exclusion order is necessary; but the exclusion order must be fashioned to effectuate protection of the important interest without unduly infringing upon the accused's right to a public trial either through its scope or duration.

*Commonwealth v. Knight*, 469 Pa. 57, 65 (1976).

A Petitioner's right to a public trial may be overcome where a proper balancing of interests has been conducted, less restrictive alternatives have been explored and rejected, and where the trial judge places the reasons for closure on the record. *Commonwealth v. Penn*, 562 A.2d 833 (Pa.Super.1989). The decision to limit the number of spectators in a courtroom is within the sound discretion of the trial court and will be reversed only if the court abuses its discretion in issuing an exclusion order or in fashioning the scope and duration of said order. *Commonwealth v. Berrigan*, 501 A.2d 226, 234 (Pa. 1985).

There was a pattern of intimidation which began before this case came to trial. Witness Julius Roberts testified that the reason he came forward in the first place was that the Petitioner threatened him when they were in the Detention Center together. Roberts testified that the Petitioner was ranting and raving and said to him, "Slug, you soft. You know you seen my work.

14

You see the way I put in my work. You seen the work I put in front of your door." The Petitioner also said, "You are the only mother fucker---you are the only mother fuckin' witness basically pertaining to this case." N.T. 02/13/12 at pp. 88-98.

Witness Michael Green was threatened in the hallway outside the courtroom by two spectators who had been sitting on the Petitioner's side of the gallery. The Assistant District Attorney (ADA) observed the males approach Mr. Green. Afterwards Green told the ADA that the males threatened him and called him a snitch. N.T. 02/14/12 at p. 4.

Montrel Green was almost finished testifying when the Court recessed for the day. The next day, when Court resumed, Mr. Green refused to answer any questions. The ADA then put on the record that when she went into the holding cell to speak to Mr. Green, he was mouthing words to the Petitioner, who was in an adjacent cell. Additionally, Montrel Green testified that the Petitioner asked him not to testify. N.T. 02/16/12 at p. 112.

Furthermore, the Court noted on the record that there had been issues in the courtroom with spectators speaking or acting out, who had to be removed from the courtroom. N.T. 02/16/2012, at pp. 52-53. Under such circumstances, the Court did not abuse its discretion in determining necessity existed to warrant the issuance of the exclusion order. Furthermore, the Court did not abuse its discretion in the scope and duration of the order. The duration of the order lasted only during the cross-examination of Montrel Green by the defense.

Since no abuse of discretion occurred, appellate counsel cannot be found ineffective for failing to raise the issue on appeal and therefore PCRA counsel cannot be found ineffective.

### Issue V

Petitioner argues that PCRA counsel was ineffective for failing to investigate newly discovered evidence in the form of an affidavit from Montrel Green and an affidavit from Deric

15

Williams and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim. Specifically, Petitioner claims that PCRA counsel was ineffective for failing to further investigate the claims arising from the affidavits.

As a general matter, recantation evidence "is notoriously unreliable, particularly where the witness claims to have committed perjury." *Commonwealth v. D'Amato*, 856 A.2d 806, 825 (Pa.2004). However, even as to recantations that might appear otherwise dubious, the PCRA court must assess the credibility and significance of the recantation in light of the evidence as a whole, and make the initial assessment of the importance of the testimony to the outcome of the case. *D'Amato, ibid.* When seeking a new trial based on alleged after-discovered evidence in the form of recantation testimony, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Johnson*, 966 A.2d 523, 541 (Pa.2009).

Green pled guilty to third degree murder and related charges for his involvement in the murder of James McClain. He swore under oath at his plea and at trial before this Court that the Petitioner committed the murder of decedent McClain. In Green's affidavit, he asserts that police detectives forced, threatened, and coerced him to implicate Petitioner in the instant matter during every encounter with them. Green further asserts that he was induced by the authorities to implicate Petitioner because of the promise of a lenient plea deal; that his statement was given without the presence of an interested adult and that he lied during Petitioner's trial when he implicated him in the instant matter.

16

The law is well-settled that a recantation from a convicted co-conspirator, like Green, who waited until after he had been sentenced and had nothing to lose to come forward, is one of the least reliable forms of after-discovered evidence. Additionally this was a waiver trial, so the trial court as factfinder in this case was in a superior position to observe and assess the credibility of the witness. *See Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1181 (1999). Furthermore, Petitioner is unable to show that Green's recantation could not have been obtained at or prior to the conclusion of trial through reasonable diligence. In fact, similar evidence was presented at trial in the form of a letter that Montrel Green wrote to the Petitioner stating that he was being pressured by police to lie in order to get a better deal. N.T. 02/16/12 at p. 122. *See D-9 attached hereto and marked Exhibit "A."* Since the subjects contained within the affidavit were fully explored at trial during direct and cross-examination, there is nothing contained in the recanting affidavit that was not or could not have been elicited at trial. *See Commonwealth v. Wilson*, 649 A.2d 435, 448-449 (Pa. 1994). Finally, this asserted after-discovered evidence is not of a nature and character that would likely result in a different verdict if a new trial were granted. *See Montrel Green's affidavit, attached hereto and marked Exhibit "B."*

In Williams' affidavit, he asserts that the contents of the statement he gave to police are not true. He asserts that at the time he gave his statement, he had been deprived of his psychiatric medication for three days when he was held at the homicide unit, and that he told the detective what he wanted to hear to get the detective away from him. However, Williams testified at trial consistently with his statement. He was perfectly coherent and made no claim of being on medication at the time he gave his statement. Furthermore, the recanting affidavit would be used solely to impeach the credibility of Williams. Lastly, this asserted after-discovered evidence is

17

not of a nature and character that would likely result in a different verdict if a new trial were granted. *See Deric Williams' affidavit, attached hereto and marked Exhibit "C."*

Finally, considering the evidence regarding threats and coercion of these two witnesses by the Petitioner, any recantation would be of so little weight as to amount to a nullity.

Thus, the underlying assertion lacks arguable merit and PCRA counsel cannot be found ineffective for failing to raise a meritless issue.

### Issues VI a) and b)

Petitioner argues that PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for failing to object to the testimony of Montrel Green. Petitioner further argues PCRA counsel was ineffective for failing to argue ineffectiveness of appellate counsel for not raising the issue of the prosecutor's subornation of perjury with respect to the testimony of Montrel Green and that the Court erred in accepting PCRA counsel's assertion of no merit with respect to these claims. Specifically, Petitioner asserts that by presenting what the Commonwealth knew to be perjured testimony, they suborned perjury.

As the PCRA court found, these claims are without merit because there was no basis for counsel to object. Green's testimony was admissible and subject to cross-examination. It was for the trial court, sitting as factfinder, to judge the credibility of the witnesses, which the trial court did. Since these claims lack merit, trial/appellate and therefore PCRA counsel cannot be found ineffective.

### Issue VIII

Petitioner asserts PCRA counsel was ineffective for failing to argue ineffectiveness of trial counsel for failure to raise a *Brady* claim with respect to phone records that were not

18

available until mid-trial. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

The evidence that the Petitioner claims is *Brady* evidence which was not turned over to the defense until mid-trial is the Petitioner's cell phone records.[7] Michael Green testified that the Petitioner made certain admissions to him over the cell phone. Cell phone records for the number associated with the Petitioner were subpoenaed. Detective Sierra testified that he had them in his file and overlooked them. He handed them over on February 15, 2012 and Defense counsel reviewed the records. The records showed a forty (40) second call initiated by Michael Green to the phone number associated with the Petitioner on September 23, 2007. Defense counsel cross examined Detective Sierra regarding the records. N.T. 02/15/2012 at pp. 181-184.

The Supreme Court of the United States held in *Brady v. Maryland* that any suppression of evidence by the state that would be favorable to an accused violates the Petitioner's due process rights, when the evidence is material to either the Petitioner's guilt or sentencing. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

The *Brady* rule encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Thus, to establish a *Brady* violation, an appellant must prove three (3) elements:

1. The evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches;

2. The evidence was suppressed by the Prosecution, either willfully or inadvertently; and

3. Prejudice ensued.

---

[7] The cell phone records were for a pre-paid cell phone and had no subscriber information. However, Michael Green testified that the number associated with those records was the number he regularly used to call the Petitioner.

19

*Com. v. Lambert*, 584 Pa. 461, 884 A.2d 848, 854 (2005). Pursuant to *Brady* and its progeny, the Prosecutor has a duty to learn of all evidence that is favorable to the accused which is known by others acting on the government's behalf in the case, including the police. *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). However, there is no *Brady* violation when the defense has equal access to the allegedly withheld evidence. *Com. v. Spotz*, 587 Pa. 1, 896 A.2d 1191, 1248 (2006) ("It is well established that no *Brady* violation occurs where the parties had equal access to the information or if the Defendant knew or could have uncovered such evidence with reasonable diligence.")

Petitioner does not raise a viable *Brady* claim. Initially Petitioner's claim fails because the phone records were made available during the trial and Defense counsel used them during cross-examination. Furthermore, the evidence at issue is the Petitioner's own phone records. Certainly the Petitioner has equal access to this information. The Petitioner was aware that Michael Green gave a statement that the Petitioner made admissions to him over the phone, so the Petitioner would be aware that his own phone records could be used as a source of impeachment evidence. Lastly, the records show a phone call was made between Green and the Petitioner just after the Gates murder.

Therefore, this issue lacks merit. As such, trial counsel cannot be found ineffective. Thus, it follows that PCRA counsel cannot be found ineffective.

### Issue IX

In his Rule 1925(b) statement, Petitioner argues that the trial court erred by allowing counsel to withdraw since he was eligible to receive court-appointed counsel. The Court erred in accepting PCRA counsel's assertion of no merit with respect to this claim.

The *Turner/Finley* decisions provide the manner for post-conviction counsel to withdraw from representation. The holdings of those cases mandate a review of the record by competent counsel before a PCRA court can independently review the record and authorize an attorney's withdrawal. Once a PCRA court accepts a *Turner/Finley* no-merit letter and permits counsel to withdraw, the petitioner is no longer eligible to receive court-appointed counsel. As stated above, the PCRA court reviewed the issues raised in the PCRA petition, independently reviewed the record, concluded that Petitioner's PCRA petition was without merit, and permitted counsel to withdraw.

Accordingly, the PCRA court satisfied the requirements for reviewing a motion to withdraw under *Turner/Finley*. There was no error in the PCRA court permitting counsel to withdraw and Petitioner was not eligible to receive court-appointed counsel.

## CONCLUSION

Based on the foregoing, the dismissal of Petitioner's PCRA petition should be affirmed.

By the Court:

_Rose Marie DeFino-Nastasi_

Rose Marie DeFino-Nastasi, J.

21